Our third case today is Hartsfield v. Dorethy. Mr. Penson? Good morning and my name is Geneva Penson. I represent Mr. Philip Hartsfield. He is an I'm a prisoner. Your Honor, he has three claims pending before this court right now, all involving his allegation that the Illinois courts unreasonably applied federal law, U.S. Supreme Court precedent, in denying him relief in the Illinois courts. He was denied a writ of habeas corpus by the court unreasonably applied federal law in denying his claim that the state failed to prove him guilty beyond a reasonable doubt. His second claim is that the Illinois Supreme Court, the Illinois appellate court unreasonably applied federal law in denying his claim that he was deprived of his right to testify in his own behalf. And third, his claim is that the Illinois appellate court unreasonably applied federal law in denying his claim of ineffective assistance for failure to call a witness to testify on his behalf. That witness, Billy Thompson, testified on behalf of Mr. Hartsfield's co-defendant, and his testimony resulted in acquittal for the co-defendant. Today, I'd like to focus on the claim relative to Mr. Hartsfield's right to testify in his own behalf. During state post-conviction review, Mr. Hartsfield filed a post-conviction petition which included an allegation that his counsel denied him of his right to testify on his own behalf, and that was pled as both a direct denial of the right to testify and also ineffective assistance. Along with that petition, Mr. Hartsfield provided an affidavit from himself and his mother detailing his discussions with counsel about his desire to testify. The affidavits asserted essentially that Mr. Hartsfield repeatedly told his lawyer he wanted to testify on his own behalf, although his lawyer advised him that he still wanted to do so. His lawyer told him that if he wished to testify against his lawyer's advice, then in either case, the trial court judge would admonish him of his right to testify, and that that decision of whether or not to testify was solely his and not his counsel's. Well, that admonition never happened in the trial court, and while Mr. Hartsfield persisted in exercising his right to testify to his lawyer, his lawyer shushed him. So all of that is on the post-conviction record, even though the trial record is silent, and his mother also provided an affidavit basically indicating the same things. Ms. Stinson, certainly Mr. Hartsfield had a fundamental right to testify on his own behalf, but as our counsel decision makes clear, there's no uniform rule or binding precedent as to how such claims are preserved. So what is it specifically in the Supreme Court's decision in McCoy and Garza that you think overrules Thompson on this point? Well, first of all, Thompson is distinguishable from this case because what this court said in Mr. Thompson didn't have that at trial, but certainly the post-conviction portion of the state court record indicates that Mr. Hartsfield asserted his right to testify. But if you take a look at McCoy and Garza, I think they both stand for the proposition that for those decisions that are uniquely within the defendant's purview. But neither case dealt with a right to testify claim, although they did address other trial rights that are deemed fundamental. Yes, they address trial rights that are not only fundamental, but like the right to testify, are merely solely within the purview of the defendant. So both McCoy and Garza acknowledge, again, the Supreme Court's long-held holding that only a defendant can decide whether to plead guilty, only a defendant can decide whether or not to waive a jury trial, only a defendant and not his lawyer can decide whether or not to testify in his own behalf, and only a defendant can decide whether or not he will appeal. But you see, my problem is that neither case suggests that there is a particular rule about how such claims must be preserved, or that the Illinois practice of requiring a Well, I think both McCoy and Garza stand for the proposition that anytime someone is deprived of this right, that they can bring an independent claim and have it heard without regard to whether or not that person was prejudiced under the ineffective assistance claim. I don't believe it's correct to assertion. Illinois law as a whole requires a contemporaneous assertion of the right to testify at the trial. Certainly, that's what the Illinois Appellate Court said in this case, that the trial record was silent, and that Mr. Hartsfield's affidavits were self-serving. But I don't believe that Illinois law requires that as a whole. But if you look past even McCoy and Garza, to the US Supreme Court's decision in Rock v. Arkansas, it was established way back at that time that a defendant could not be denied his right to testify. Now, in that case, there was a defendant who initially couldn't remember all the events surrounding the alleged offense. And so that person underwent hypnosis, and her testimony, her potential testimony, was hypnotically refreshed. And the Arkansas courts barred that testimony. The US Supreme Court held that barring that testimony deprived that defendant of her right to testify in her own behalf. Ms. Penson, can I ask you a question that may be similar to what Judge Roedner's question? I'll get your reaction to it. And that is, do you agree that we should proceed here by analyzing Mr. Hartsfield's claim within the framework of Strickland? In other words, we should ask a two-prong question. Was there deficient performance as a result of counsel, as Mr. Hartsfield says, usurping his right to testify? And then if we answer that question, yes, proceed to prong two, and ask whether that right being usurped caused him prejudice. Is that the right legal framework within which to evaluate this? Well, there's two parts to my answer to that question. No, I don't agree that the claim should be analyzed solely under Strickland. If you look at McCoy and Garza, they plainly tell us that where the claim is that a defendant has been deprived of a right to make a decision that was solely his to make, then there's no need of showing prejudice in Strickland. No, I think you're well-spoken on that, okay? But what I want to focus on is exactly the claim that Mr. Hartsfield is making, okay? Mr. Hartsfield is saying that he was deprived of his right to testify at his counsel did, right? Yes, I understand. You told him to be quiet, told him to await this opportunity later on in the trial that never came, and because he, as the individual that's advancing the claim, is pointing to actions that he believes are deficient from his counsel, my question is why shouldn't we evaluate that under Strickland? Well, because Jones versus Bonds, McCoy and Garza, well, McCoy and Garza both also analyze the actions of counsel in that it was counsel in McCoy who made a concession of guilt over his client's objection. It was counsel in Garza who refused to file notices of appeal despite his client's directions to do so. Were the habeas claims in those cases brought as Sixth Amendment ineffective assistance of counsel claims? They were not. They were not. And was this claim here brought as a Sixth Amendment ineffective assistance of counsel claim? That is something that was discussed in the briefs. Yes, there was a component of the claims, the claim here that was brought as a Sixth Amendment ineffective assistance of counsel claim. However, in both Mr. Hartsfield's brief in the Illinois Appellate Court and his petition for leave to appeal to the Illinois Supreme Court, he brought a freestanding claim that he was deprived of his right to testify. Yes, it was due to his counsel's actions, but it was not strictly a claim under Strickland. He did say in his briefs in the Illinois courts and here that there was no need to show prejudice just because of the nature of the error that we have here. But I would go on to say that Mr. Hartsfield can show prejudice under Strickland. And I don't believe that the prejudice that he needs to show is necessarily, you know, that he would have said X, Y, Z and the jury would have seen things differently. The prejudice is that he wanted to testify. He instructed his lawyer that he wanted to testify. And in fact, he was denied the he was denied the ability to do that and he would have testified in his own defense. I think that that shows prejudice in and of itself. And then if you want to take a look at the evidence against Mr. Hartsfield, you also have to see that there is prejudice here and that there was no direct evidence against him. No bullets, no, no fingerprints, nothing connecting him physically to this crime, no physical evidence.  However, there were people who claimed that they were with him and went to the home where the shooting occurred. There was there were people in the house where the shooting occurred, people who lived in the house. And they didn't hear anyone come into the bedroom where the deceased person was. They didn't hear anyone do any sort of shooting. And the deceased was there in that room, to their knowledge, from 4 a.m. to 6 p.m. They heard nothing during that entire time. So there's really a lack of there's a lack of evidence tying Mr. Hartsfield directly to this crime. In addition to that, the state's witnesses who testified against Mr. Hartsfield were drunk. At least one of them testified to drinking at least 13 drinks that night shortly before meeting up with Mr. Hartsfield. And also there were a number of other people in and out of the house. There was a party that took place the night before this incident. There were a number of people in and out of the house that night. So many other people had the opportunity to do this shooting as well. So all of those things show that the evidence in this case was not extremely strong against Mr. Hartsfield. And he could show prejudice. Ms. Benson, I don't want to interrupt your interim rebuttal if you want to save some time. I would like to reserve the rest of my time for rebuttal. Thank you. Mr. Mohler. Good morning. May it please the court. Closing counsel. My name is Nick Mohler for the respondent. There is one fact that decides this. I have a philosophical question to ask you. Well, sort of philosophical, I guess. I. Legitimate. For a state court to insist that a defendant make a contemporaneous record of this wish to testify. If a court never bothers to make its own inquiry. And the defendant's counsel shushes him when the defendant tries to raise the issue with the court. Why shouldn't he be free to make his record at the post conviction stage? I think there are two prongs to the answer, Your Honor. The first would be at this stage in the habeas proceeding. It's not going to be that question of what was the best case scenario. It's not going to be a question of what ultimately do we think the court should have done. It is has the United States Supreme Court said that that's something the state court has to do. And the Supreme Court hasn't. As to the more philosophical nature of it, of why don't we do that, is that take in this instance, what happens is if you don't make the affirmative assertion of it, based upon this idea that counsel did something to stop you, there is a way to get to that. And that would be through the ineffectiveness claim. And if that's also barred because there hasn't been an assertion of that ineffectiveness claim or something like that, there would be things like the plain error doctrine and other doctrines to get you past that forfeiture. Mr. Mohler, let me ask what I think of as a related question. And I'm troubled by this a bit. Is it the state's, is the contemporaneous objection requirement, let's just call it that, okay, is that rooted in Illinois law or in some aspect of the federal constitution in your view? In my view, it would be Illinois law. Okay. And so if Illinois law is the source of the obligation, think practically about what Illinois law is requiring of an individual in Hartsfield's situation. Hartsfield, as he said in the affidavit, informed his counsel of a right that he wanted to testify. Counsel told him, keep quiet for now, right? Yes. In the affidavit, Your Honor. And later on, the trial judge will offer you an opportunity, one that never came. So is Illinois law imposing on a criminal defendant an obligation to do exactly what? To stand up in the courtroom and say, Judge, I want to testify? To write a note to the trial judge? I'm trying to be very practical here. What precisely is the obligation that Illinois law is imposing upon an individual in Mr. Hartsfield's circumstance? My understanding is that it would be very fact-specific, Your Honor. I've given you the facts. Yes, Your Honor. So in this case, I think there would be an argument that he was required to say something. If not, a note could have sufficed. There is a robust post-trial effect. If that's right, are you not concerned about an unconstitutional condition? I mean, he— Your Honor— Let me give you an absolutely absurd example, okay, that we would all agree is unconstitutional. Suppose some state required a defendant to stand up and clap if he wished to testify. Everyone on the planet would say that's unconstitutional, that state law requirement. And so what I'm worried about here is Illinois law requiring somebody not trained in the law, facing something very serious, to just stand up in the middle of his trial and say, Judge, I'm not sure what's going on here, but I want to testify. I think, Your Honor, there would be, in that instance, or in the instance— How about this instance? In this instance, where counsel, if as asserted, proactively— His lawyer told him to be quiet. Well, on that instance, there would be—there's nothing in the record to show this happened. Other than a sworn affidavit. Yes, Your Honor. But the idea—sorry, let me start that again. So if counsel stops a defendant from standing up and asserting it, that does not stop the defendant from a note or a letter to the judge after, which is frequently what happens— Think of the reality of what you're saying right now. Yeah. Well, Your Honor, that's how almost any ineffectiveness claim comes to the attention of the court. It would have to be brought up by defendant at some point. And so to say that in this instance is different because he was stopped by his attorney at one point does not explain why it was not brought up later on in the proceedings. I have a difficulty with the practical—what's he supposed to do? Say, I know you told me to shut up. Give me a piece of paper. I'm writing a letter to the judge. No, I don't mean during trial, Your Honor. I believe that after trial, in a post-trial motion, if something was done, a letter could have been put to the judge. I mean, it's tough. I mean, he's in jail. I mean, he can't have a—he can't say, Judge, I'd like to meet this afternoon. I have concerns about what happened at trial. On the practical matter, though, Your Honor, that happens all the time with other claims of ineffectiveness of assistance. That's why Illinois has the Krinkle proceedings. It does where the trial—if the defendant brings up ideas of ineffectiveness, he's allowed to bring that before the court, and there is a preliminary hearing. I don't know that we have to resolve it, but I just encourage the state to think long and hard about how much you want to push this contemporaneous objection requirement. And it is important to note, Your Honor, that the state courts have made clear that they would prefer that the trial court actually do admonishments on the record. This is just not a case where it happened. And because we are in habeas, this means that we're not asking what are best practices. We have to ask what has the Supreme Court said you have to do. But you have a post-conviction opinion here, right? Yes, Your Honor. That is in the supplemental appendix. It is denying post-conviction relief on the failure to contemporaneously object. That's one ground. Yes, Your Honor. And this court has said that that is unacceptable under the habeas rules. It may not be philosophically ideal. What do you have in mind, Thompson? Yes, Your Honor. Because that is the position we are in in these proceedings. We are in habeas. This is not a place to make new law. It can't be done. It all comes back to the fact that there has not been a United States Supreme Court opinion that addresses whether counsel can affect defendant's right to testify. Every case by the Supreme Court about the right to testify has been about either the trial court taking action or not taking action, the prosecutor doing something, or the state itself passing a law that prevents testimony. Because of that, there can't be habeas relief because there simply is no clearly established Supreme Court law. Forgive me, but suppose in the post-conviction proceeding, Mr. Hartsfield had presented an affidavit from his trial counsel substantiating the allegation that counsel overrode Mr. Hartsfield's wish to testify and prevented him from alerting the court of his desire to testify. Would the claim be in a different posture? I think the state courts would, Your Honor. I think that would be a slightly different ineffectiveness claim, more strictly confined to the conduct counsel took, where it's much more clear that counsel is saying, no, I stopped him. Because I think that would be a different ineffectiveness claim, though slightly different, and it would be addressed as such. But even if we put Thompson aside, and the fact that while it may not be the most satisfying conclusion, it is what habeas requires, even if we look to the actual question of the claim itself, Strickland is the proper way to deal with this claim. It's a simple principle that the only institution that can deprive the defendant of his rights is the state. That requires action either by the state or by the court as part of the state. There's only one exception I can think of for when that's not the case, and that's if your counsel appointed by the state does something. But that doesn't get you automatically to the direct claim. The United States Supreme Court has set up its own framework for dealing with where counsel is affecting the defendant's rights, and that's the Strickland framework. So what you're saying is forget this whole dialogue we were having about the contemporaneous objection rule. Yes, Your Honor. Just get within Strickland and evaluate it under prong one or prong two of Strickland because that, too, is part of the post-conviction relief opinion. Yes, Your Honor. The state court had an alternative Strickland opinion. It was a reasonable opinion, and first it should be pointed out reasonable or not. It doesn't contradict the United States Supreme Court. The United States Supreme Court has not put out any opinion that says how courts are supposed to deal with a claim like this, and because it doesn't contradict any clearly established law, again, habeas relief cannot result. But this court doesn't need to get to the determination of what prejudice standard actually applies because under either standard it's clear that petitioner cannot show prejudice. In effect, though counsel a moment before spoke that the fact that he says he was denied his right to testify is prejudice enough, that's not the prejudice test before this court. Before this court is the question, are we under Strickland or are we under Brecht? Both of those cases deal directly with the verdict at the trial. It is whether there is a reasonable probability that for the counsel's actions there would have been a different outcome or if there was a substantial injurious effect to the jury's verdict. Now, that means whatever this court's decision is on what the proper prejudice standard is, it's a question of would the petitioner's proposed testimony have changed the jury's verdict. And the proposed testimony is simply I did not commit the murder, I was driving along by myself. This is not adding anything to what the jury already knew. The jury knows... Actually, he said, I think what he said was that he went to see another girlfriend in Chicago. Your Honor, the affidavit says he went to see the other girlfriend or I believe it says he went to Chicago, attempted to call the other girlfriend but could not get a hold of her. And so it's still while he gives a motive for going towards Chicago, there is nothing that could be corroborated. There are no details beyond I was driving alone making phone calls, which was affirmatively rebutted by the record because there were stipulations as to the phone calls that petitioner actually made and they line up with the testifier or what the witnesses testified to in their testimony about phone calls. So what this ends up with is he's got a generic denial of guilt, which is not different from what the jury knew, that he was pleading not guilty because he was there having a criminal trial. It does nothing to undercut with anything more than his self-serving and undetailed account. The two witnesses who saw him armed head back to where the victim was later found murdered. It does nothing to confront the witnesses who said he made somewhat incriminating statements after the fact, whether that's threatening one of the witnesses as he dropped her off at home or bringing up apropos of nothing that if he ever went to jail for murder, it would basically brought up to his first girlfriend that if he ever went to jail for murder, I believe he said he would kill himself or something along those lines. So he makes incriminating statements. And then a 40 caliber gun barrel and 40 caliber bullets and spent casings are then given to another witness by co-defendant and disposed of. So all of that evidence is not undone by his uncorroborated and generic statement that I didn't do it. I was off by myself under either Brecht or Strickland. That does not establish prejudice. And so this court does not even need to get to that decision. Although if one were to look at McCoy and Garza, they would see there is a clear distinction made by the courts with these autonomy cases. And it's if the trial court doesn't know the defendant hasn't been able to make that decision on his own, then you're in a case of Strickland, which is what the court did here. So unless there are any other questions from the court, we would ask that you were for affirm the decision of the district court. Thank you, Ms. Moeller. Ms. Penson? Counsel has made much of his assertion that Mr. Hartsfield failed to bring this to the trial court's attention. Certainly at his trial, he did not speak up. And this court has even said, in its jurisprudence in Underwood, that it is very understandable when a defendant fails to disrupt court proceedings and speak out on his own behalf. He has a lawyer, and that lawyer is there to speak to the court for him. Now, what counsel fails to acknowledge, though, is that Mr. Hartsfield did, in fact, point out to the court in his first opportunity that he wanted to testify, and he was not allowed to do so by his lawyer. He did that in a post-conviction petition in the Illinois courts. That is the premier vehicle for bringing ineffective assistance claims or claims of anything that happened off the record. So if there is any burden of Mr. Hartsfield pointing that out, he certainly met that burden. And I see that my time has expired. You may have another minute to wrap up. Okay. He certainly met that burden by providing affidavits in his post-conviction petition. And I also wanted to point out to the court, there is no great body of Illinois law saying that there is a contemporaneous objection. for a defendant to bring a claim that he was denied his right to testify. Certainly, that's what the Illinois appellate court said in this case. But there is no great body of Illinois law saying that. What there is a considerable body of Illinois law saying is that the Illinois courts, the trial courts, are urged to admonish the defendant that he has a right to testify. And on page 21 of our brief, we have pointed out a number of cases to that effect. Your Honor, overall, Mr. Hartsfield, he had every right to testify in his own defense. And whether you look at that denial as a freestanding claim or an ineffective assistance claim, we can show that his constitutional rights were denied. We'd ask you to reverse the district court's decision to the contrary. Thank you. Thank you, Ms. Benson. Thank you, Ms. Mueller. The case is taken under advisement.